Argued March 12, reversed April 29, 1924.

# FRANCES I. ANDERSON, Admx., *v.* PATRICK R. MALONEY and TOM SWENNES.

(225 Pac. 318.)

**Limitation of Actions—Amendment to Complaint Electing to Sue in Tort After Reversal for Misjoinder Held not "New Action" Within Statute.**

1. Plaintiff's amendment to complaint in death action electing to sue in tort after reversal of favorable judgment, because of misjoinder of actions in tort and in contract, *held* not commencement of new action, required to be brought within one year after reversal, under Section 21, Or. L., but was continuation of original action.

**Negligence — Lawful Operator not Liable for Acts of Fellow-Operator.**

2. In the pursuit of a lawful undertaking no one is liable for acts of his fellow-operator in excess of authority or negligently without concurrence of other.

**Municipal Corporations—Policeman Aiding Recapture of Prisoner not Liable for Shooting of Third Person by Other Officer.**

3. Under Sections 1908, 1909, Or. L., where two police officers were shooting after escaping prisoner, one officer was not liable for negligent act of the other in accidental shooting a passenger in a street-car.

**Municipal Corporations—Burden on Plaintiff to Prove Unjustifiable Shooting by Officer and Identity of Such Officer.**

4. Where plaintiff's intestate was accidentally shot when two police officers were shooting after escaping prisoner, *held*, that the burden was on plaintiff to show that the shooting was without justification under Sections 1908, 1909, Or. L., and to point out which officer fired the shot which struck intestate.

**Judgment—If Evidence Shows Which of Two Police Officers Sued Jointly Committed Act Charged, Judgment Could be Rendered Against Him and in Favor of Other.**

5. In action against two police officers for joint tort in shooting plaintiff's intestate in firing after escaping prisoner, *held* that, if there were evidence tending to show which officer fired the shot which hit intestate, judgment could be rendered against him and in favor of the other officer, under Sections 180 and 181, Or. L., dispensing with the old rule that having alleged a joint tort plaintiff must prove it.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

REVERSED.

For appellants there was a brief over the names of *Mr. Robert A. Imlay, Mr. Henry J. Bigger, Messrs. Davis & Farrell* and *Mr. Chester V. Dolph,* with oral arguments by *Mr. Imlay* and *Mr. Bigger.*

For respondent there was a brief over the names of *Messrs. Richards & Richards* and *Mr. W. D. Burnett,* with an oral argument by *Mr. Oren Richards.*

BURNETT, J.—This was an action originally commenced by Thomas M. Askay as administrator of Walter E. Askay, deceased. Since its appeal the third time to this court, Thomas M. Askay died and the present plaintiff, Frances I. Anderson, as administrator of the estate of Walter E. Askay, was substituted as plaintiff on March 27, 1923. On former appeals, the case is reported in 85 Or. 333 (166 Pac. 29), 92 Or. 566 (179 Pac. 899).

In addition to the statements of fact in the two preceding opinions, it is enough for present purposes to state that the two defendants, Maloney and Swennes, were police officers of the City of Portland and as such had arrested one Jones, who had committed a robbery in Portland, and were conducting him to the city jail. As they proceeded, Jones broke away from them and ran. One of the officers commanded him to halt or he would shoot. As he persisted in his escape, the officer fired at him and the other officer, coming up, likewise fired. One of the bullets in the fusilade penetrated a window in a passing street-car, entered the body of Walter Askay below his right ear, and went traversely across and broke

the skull on the opposite side where it lay beneath the skin.

In the two former trials, the complaint was framed, not only against the two policemen, but against the Southwestern Insurance Company. The judgment in the first trial was reversed for error in giving instructions to the jury. The case was again tried on the same complaint. At the second trial the defendants endeavored to compel the plaintiff to elect whether he would proceed as upon tort, based upon the actions of the officers, or in contract as founded upon the undertaking given by the surety company. The trial court denied their motion to that effect and this was held to be error. It was likewise decided that the court was wrong in its instructions about the burden of proof. After the second reversal when the cause was remanded for a new trial and not dismissed, the defendants moved to strike out the plaintiff's complaint which motion was allowed with leave to the plaintiff to file an amended complaint. Plaintiff then filed such amended pleading leaving out all allusion to the surety company but, as to the two policemen, couched in precisely the same terms used against them in the first complaint. The amended pleading, after citing the appointment of the plaintiff as administrator, and that the defendants Maloney and Swennes were police officers of the City of Portland, a municipal corporation, concludes with the following allegation:

"That at all of the times herein mentioned there has existed within the corporate limits of the City of Portland, the following named streets: Fifth Street, Pine Street and Sixth Street, all of which said streets and intersection formed by said streets are centrally located, that is, the same are located within the business and busy portion of the said

City of Portland, and many people are upon said streets at all hours of the day and night; and that upon said Fifth Street, two lines of street-car tracks are operated by a street-car company, over which many street-cars are operated, and over which many passengers are conveyed; that upon the 25th day of December, 1914. plaintiff's intestate, Walter E. Askay, was a passenger upon a street-car at or about the intersection of said Fifth and Pine Streets in the City of Portland, and at said time, the defendants, Patrick R. Maloney and Tom Swennes, at said intersection of Fifth and Pine Streets, commenced to discharge and did discharge revolvers, and thereby caused leaden bullets to be promiscuously sent toward the street-car upon which plaintiff's intestate was then riding, and the said defendants, Patrick R. Maloney and Tom Swennes at said time, each holding and discharging revolvers, carelessly and negligently, and without care or caution, disregarding the fact that said intersection was a place where passengers and people were likely to be, discharged said revolvers and caused one of said leaden bullets to strike plaintiff's intestate, said Walter E. Askay, while said Walter E. Askay was within said street-car, with such force that from the wound caused by said bullet, said Walter E. Askay died, and his death was directly caused by the said negligence and carelessness, and wanton acts of defendants, Patrick R. Maloney and Tom Swennes; and that said Patrick R. Maloney and Tom Swennes at said time were police officers of the City of Portland, and were carrying said revolvers by virtue of their said official position, and pretended to be in discharge of their duties as police officers at the said time, in that the said Patrick R. Maloney and Tom Swennes at said time although without justification, were discharging their said revolvers toward a person whom as said police officers, they and each of them had arrested and taken into custody. That by reason of the foregoing, the Estate of Walter E. Askay, has been damaged by the defendants Patrick R. Maloney and Tom Swennes to the full sum of $7500.00.''

The defendant policemen demur to the amended complaint separately but in identical terms, on the ground that it does not state facts sufficient to con stitute a cause of action and that the action was not commenced within the time prescribed by Sections 8 and 21, Or. L., which are here set down:

"Section 8. (1) An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not herein especially enumerated; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit.

"(2) An action upon a statute for a forefeiture or penalty to the state or county."

"Section 21. If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal, the plaintiff, or if he die, and the cause of action survives, his heirs or personal representatives, may commence a new action within one year after the reversal."

These demurrers were overruled. Each defendant then answered separately, averring that Jones had committed the felony of assault and robbery for which they had arrested him and were taking him to prison when he broke away from them and escaped; and that, acting independently of each other in the discharge of his duty as a peace officer, the answering defendant had, with due circumspection, care and caution, shot at Jones, it being necessary to effect his recapture. Each defendant narrates what he did separately in shooting at the escaped felon and from the answers. It is averred that each shot at him from different point on the street.

The replies traverse the affirmative matter in the answers in all important particulars. The third trial resulted in a verdict against the defendant policemen jointly, and from the ensuing judgment both have appealed.

1. The first assignment of error is to the effect that the court was wrong in allowing the plaintiff to file the amended complaint and they specify as ground therefor that the amendment changed the cause of action from one upon contract as to the defendants Maloney and Swennes and the surety company, to one sounding in tort against Maloney and Swennes alone. The first complaint was filed April 28, 1915. On the second reversal, the mandate of this court was entered in the Circuit Court June 23, 1919. The order striking out the original complaint and allowing an amendment was dated May 11, 1921, and it was not until June 30, 1921, that the amended complaint was filed against Maloney and Swennes, without reference to the surety company in any way. The argument is that this was commencing a new action upon a new chose in action and that, having been instituted neither within two years after the shooting nor within one year after the reversal of the judgment, the statute of limitations has run against the cause of action. It is conceded that the original action against the policemen and the surety company was commenced within two years after the cause of action arose; but the defendants urge that the reversal of the judgment amounted to a destruction of the action; that the amended complaint, not having been filed within one year after the reversal, it was not within the time prescribed by Section 21, Or. L., *supra*. We cannot accede to this view of the law as applied to the

pleadings in their present form. The reversal contemplated in Section 21 is one which finally disposes of the action beyond repair, as to that action. A reversal for new trial is not within the purview of that section of the statute. This action has been pending since the filing of the original complaint. As to the present defendants, the complaint has always been and still is in precisely the same form as it was in the beginning. The error in the original complaint was that two causes of action had been improperly united, one for a tort against the two officers and the other in contract against the surety company. Moreover, the obligation of the surety company was not concurrent with that imposed upon the individuals on account of their alleged tort. The company's liability was successive and ancillary to that of the individual defendants. Having decided in the second appeal that an election as between proceeding for tort and upon contract ought to have been compelled, the plaintiff has sought to comply with the decision of this court on that subject and cannot be penalized for her obedience. No new or different cause of action against the individuals has been stated. The procedure followed by the plaintiff is not to "commence a new action" within the terms of Section 21, Or. L., but the continuation of the original action.

2, 3. The facts are the same in this case as upon each of the former trials. There was but one pistol shot struck the decedent. The officers were, as a matter of law, engaged in a lawful undertaking, that of retaking an escaped felon. By the terms of Section 1908, Or. L.,

"The killing of a human being is justifiable when committed by public officers or those acting in their aid and assistance and by their command * *

"3. When necessarily committed in retaking persons charged with or convicted of crime who have escaped or been rescued; or,

"4. When necessarily committed in arresting a person fleeing from justice who has committed a felony."

By the following section, the killing of a human being is also justifiable when committed by any person as follows:

" * * (3) In the attempt by lawful ways and means to arrest a person who has committed a felony or in a lawful attempt to suppress a riot or preserve the peace."

Without dispute, the testimony is that Jones had committed the felony for which he was afterwards convicted and imprisoned in the penitentiary, that he had escaped from the custody of the officers; that they shot at him after warning him to stop or they would shoot, and that he still persisted in his effort to escape. The case presented is essentially different from one in which two or more parties are jointly engaged in the prosecution of an unlawful enterprise. In the latter instance, the law casts upon them, as it were, a criminal partnership in which each participant in the enterprise is responsible for the act of every other member of the combination until its consummation. In the instant case, however, where the enterprise in which the defendants were engaged was one not only authorized but commanded and justified by law, neither is responsible for the excess of the other's actions beyond the limits of his authority. In *Wert* v. *Potts,* 76 Iowa, 612 (41 N. W. 374, 14 Am. St. Rep. 252), a case where the plaintiff was an innocent bystander injured by one of two persons lawfully engaged in arresting another, the court said:

"Where two or more are acting lawfully together in the furtherance of a common lawful purpose, one is not liable for the unlawful act of another, done in furtherance of the common purpose, without his concurrence. The rule would probably be different if the common purpose be unlawful. The facts presented by the pleadings and evidence illustrate the rule, and support its application to this case. The purpose of defendants in the arrest of the offender was lawful. Now, if one or the other of the defendants, without cause or justification, did discharge a pistol at the accused, without the concurrence of the other, with the purpose of aiding in the arrest, the other defendant would not be liable for such unlawful act. Surely, no one is ready to claim that officers and others, acting in concert in making a lawful arrest, are liable for the unlawful act of one of their number, done without their concurrence. Did the rule of the instruction prevail, all engaged in preserving the peace, and enforcing the law by arrest, would be subject to liability for the unlawful act of one over whom they had no control, and in whose unlawful purposes they in no manner shared. The thought of the instruction, that the common purpose of arrest made each defendant liable for the unlawful acts of the other, is apparently wrong, and doubtless was extremely prejudicial to defendants."

Again, in *Richardson* v. *Emerson,* 3 Wis. 288 (62 Am. Dec. 694), it was said:

"A private citizen has a right to abate a nuisance, and to engage assistance for the accomplishment of that object; but if, while working together for such common lawful purpose, one or more commits a trespass, the others are not liable unless they in some manner assent. Where the common design is unlawful, the law presumes such assent; but where it is lawful, such assent is a matter of fact to be proved."

Likewise in *Boyd* v. *Philadelphia Insurance Patrol,*
113 Pa. St. 269 (6 Atl. 536), the circumstances were
that employees of the defendant insurance patrol
went with a wagon to a place where a fire had oc-
curred, to bring away some tarpaulins used by the
patrol for the protection of goods during the fire.
One of the men stood outside the building holding
the horse hitched to the wagon. The other went
into the upper story where the tarpaulins were
rolled up into bundles weighing about fifty pounds
each, and tossed them out into the street towards the
wagon. In so doing, one of the bundles struck and
injured the plaintiff. Treating of this situation, the
court in speaking of the man who held the horse
said:

"He and Hutchinson, it is true, came together to
remove the tarpaulins from the fourth story of the
store, and it was doubtless the duty of each, in so
doing, to exercise due diligence and care for the
safety of those passing, but unless their negligence
was joint or concurrent, each was liable for his own
negligence only."

4. The plaintiff alleged in the amended complaint
that the present defendants

"pretending to be in discharge of their duties as
police officers * * although without justification, were
discharging their said revolvers toward a person
whom as said police officers, they and each of them
had arrested and taken into custody."

Having thus described his grievance, and it having
been traversed by the answer, it was incumbent upon
the plaintiff to prove the averment as alleged. The
testimony for the plaintiff, however, shows a con-
dition of affairs in which they were "not without
justification" but were justified by the statute itself.
Moreover, it matters not how negligent either may

be, he is not to be cast in damages for that negligence if it did not work any harm to the plaintiff. It has been shown that in the pursuit of a lawful undertaking, no one is liable for the negligence of his fellow-operator, committed in excess of authority or negligently without the concurrence of the former. In the instant case, there is no evidence whatever as to who fired the bullet that struck Askay. Neither is it disclosed anywhere that any act of either defendant influenced the other in firing his pistol. Considering, for illustration only, that in fact it was one of Maloney's bullets that inflicted the wound, there is nothing indicating in the least that any act of Swennes influenced Maloney in what the latter did. However, in the shooting described, according to the precedents cited only the negligence, if at all, of the one who fired the bullet that struck Askay can be taken into account in this case. The record is silent upon that subject. In brief, the plaintiff has utterly failed to prove who shot Askay.

5. Sections 180 and 181, Or. L., read thus:

"Section 180. Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves.

"Section 181. In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, whenever a several judgment is proper, leaving the action to proceed against the others."

It is true that if there had been any evidence tending to prove which of the two officers fired the shot that killed Askay, judgment could have been rendered against him and in favor of the other, dispensing with the old rule that, having alleged a joint tort,

the plaintiff must prove a joint tort or fail in the action. The case presented by the evidence in the instant case is one of complete failure of proof. All that has been shown is the mere happening of an accident. By whose fault it happened, if fault at all, is not disclosed.

The defendants moved for nonsuit based on the facts as stated and raised the same question in a request to charge, and in exceptions to the following charge of the trial judge.

"You need not find from whose revolver the bullet speeded, if it left the revolver of either of the defendant officers, and you can return a verdict against either one of the officers or against them both, if you find for the plaintiff, as your judgment indicates. The Supreme Court in this very case has held that it will not be necessary for the jury to pick out the particular officer whose bullet killed the deceased, if you should find that a bullet fired by either of them did so."

It is true that in his opinion in *Askay* v. *Maloney,* 85 Or. 333, 343 (166 Pac. 29), Mr. Justice MOORE wrote that "no error was committed in denying the motion to require the plaintiff to elect the officer who caused the injury." In distinguishing that statement, we must remember that the language was used concerning the ultimate liability of the surety company which had given an undertaking for both the officers. The effect of the ruling was to allow the plaintiff to go to the jury as to both the defendant officers as against the surety company, but nowhere in the opinion is it decided that one of the officers who fired skillfully and carefully is liable for the negligence of the other who used his pistol so carelessly or unskillfully that it caused the decedent's death. The construction put upon that

opinion by the quoted charge to the jury is directly at variance with the doctrine of *Wert* v. *Potts, supra,* quoted with approval in that self-same opinion. To compel the plaintiff to choose between two defendants, to proceed as to one and to dismiss as to the other is quite a different question from that involved in a failure of proof.

In a case of this kind, it is incumbent upon those who would profit and get gain by the untimely death of the decedent to point out, not only the particular negligence which brought about that death, but the identical individual who was guilty of the negligence. The fallacy of the plaintiff's case lies in the failure to distinguish between a transaction inherently tortious *ab initio* and one justified by law in the beginning in pursuit of which one of those engaged commits a tort on his separate initiative. The trial court was wrong in denying the motion for nonsuit in refusing the instructions requested by the defendants and in giving the one last above quoted. The judgment is reversed.

REVERSED.